UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 2:13-CR-6-HAB |
| DAVID LEE HARDIN, Jr. | |

## OPINION AND ORDER

In early 2013, Defendant David Lee Hardin and his accomplice were arrested after robbing a bank in Hammond, Indiana. Hardin pled guilty to armed bank robbery (Count 1), *see* 18 U.S.C. § 2113(a), and using/discharging a firearm in furtherance of that crime (Count 2), *see id.* § 924(c). He was sentenced to 355 months' imprisonment, consisting of 235 months on the bank robbery count and a consecutive 120 months on the firearm count. This sentence was grounded in the Defendant's total offense level of 36 and his criminal history category of III, that together yielded a guideline range of 235-293 months' imprisonment on Count 1. The sentence for Count 2 was a statutorily prescribed mandatory consecutive 120 months' imprisonment.

Since Hardin was sentenced, the United States Sentencing Commission passed Amendment 821. Part A of the amendment addresses status points, decreasing them by one point for individuals with seven or more criminal history points and eliminating status points for those with six or fewer criminal history points. Subpart 1 of Part B creates a new § 4C1.1 guideline that provides a decrease of two offense levels for "Zero-Point Offenders" (those with no criminal history points) whose offense did not involve specified aggravating factors. Parts A and B, subpart 1 of the criminal history amendment both have retroactive effect. Because of the retroactive nature of the Amendment, Defendant now moves to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Part A of Amendment 821. (ECF No. 118). The government does not oppose

Defendant's eligibility under Part A of Amendment 821. (ECF No. 122). The government does oppose Defendant's push for a low-end sentence of the reduced guideline range. After review of the parties' filings, the Court finds that a reduction in sentence is proper, and a sentence of 210 months' imprisonment is the appropriate sentence.

## DISCUSSION

### I.     Legal Standard

A motion to modify an otherwise final judgment pursuant to § 3582(c)(2) is a limited and narrow exception to the rule that final judgments are not to be modified. Specifically, § 3582(c)(2) provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission ..., the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582. Thus, under § 3582(c)(2), the Court must undertake a two-step process to determine whether a final sentence should be modified based on a sentencing range that has been lowered by the Sentencing Commission. First, the Court must determine if a retroactive amendment to the Sentencing Guidelines indeed lowered a defendant's guidelines range and whether a reduction is consistent with the applicable policy statements. Second, the Court must consider the § 3553(a) factors to determine if it will exercise its discretion to reduce that defendant's sentence.

Among other things, the Sentencing Commission policy statement applicable here provides that a court "shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) ... to a term that is less than the minimum of the amended guideline range," U.S. SENT'G COMM'N,

2

GUIDELINES MANUAL §1B1.10(b)(2)(A), p.s. (NOV. 2023) ("USSG."). Nor can the reduced term of imprisonment be less than the term of imprisonment the defendant has already served. USSG §1B1.10(b)(2)(C), p.s. The policy statement makes exceptions for a defendant that has provided substantial assistance and cases involving mandatory minimum sentences. USSG §§1B1.10(b)(2)(B) and 1B1.10(c), p.s.

Finally, the § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the applicable sentencing guidelines range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a). The commentary to §1B1.10 requires the court to consider two additional factors: public safety and post-sentencing conduct. USSG §1B1.10 comment (n.1(B)(ii) and (iii)).

**II.    Offense Conduct**

On December 21, 2012, Defendant and his co-defendant, Brealon Miller, Jr. ("Miller"), while armed with guns, robbed BMO Harris Bank in Hammond, Indiana. Miller brandished a firearm at a security guard and disarmed the guard. Hardin jumped the bank counter and took money from the teller drawers while Miller gathered the customers together in the center of the bank. Hardin threatened the customers several times and had Miller count down from five – the clear implication being that someone would be shot at the end of the countdown. As police arrived

3

and the two men fled the bank, Miller shot an officer three times in the leg. The two men then fled in a vehicle, leading police on a vehicle pursuit into Gary, Indiana, where both defendants were eventually apprehended.

Hardin pled guilty to both counts of an indictment pursuant to plea agreement that provided for a low-end guideline recommendation from the Government at sentencing. Probation prepared a Presentence Report (PSR) that calculated Hardin's guideline range based on a base offense level of 20. After 19 levels were added for various guideline enhancements and 3 levels were deducted for acceptance of responsibility, Hardin's offense level was 36. Hardin did not object to any of the guideline enhancements, including a two-level enhancement for physical restraint of a victim. Hardin's criminal history category was based on a total of 5 criminal history points. As part of this calculation, Defendant received two additional points to his criminal history score, because he committed the offenses while under a criminal justice sentence. These calculations resulted in a guideline range of 235-293 months' imprisonment on Count 1.[1] The sentencing judge sentenced him to 235 months' imprisonment on Count 1.

Since his sentencing and while housed at the BOP, Hardin obtained his GED and has completed a lengthy list of programming including: 1,000 hours of culinary arts training, 144 hours of masonry training, and four hours of forklift training. (ECF No. 131-1). Hardin has also had two disciplinary write-ups. (ECF Nos. 131-2, 3). The write-ups appear to be part of the same incident in which Hardin secreted and attempted to destroy/dispose of a cell phone. During this incident he

---

[1] By comparison, Miller's counsel objected, and the Court sustained the objection, to the two-point enhancement for physical restraint of a victim. Hardin's counsel requested access to Miller's PSR to confirm this information. The Court conducted an in-camera inspection of Miller's PSR and confirmed for Hardin's counsel that Miller's final offense level was 34 (after the ruling on the objection) and his criminal history category was 1. These calculations yielded an advisory guidelines range of 151-188 months on Count 1). Miller received a 160-month sentence on Count 1.

was also charged with an assault without serious injury. After a hearing in which Defendant was found guilty of the two disciplinary infractions, Defendant was sanctioned with a loss of: 68 days of good time credit, 120 days of commissary, 180 days phone privileges, 60 days of media privileges, and 150 days of visiting privileges.

### III. Analysis

The Defendant's motion invokes Part A of Amendment 821. Part A permits a reduction in status points under certain circumstances. Defendant here received two status points and thus, under the amendments, his criminal history score would be reduced by two points – from 5 to 3 – with a corresponding change in his criminal history category from III to II. As a result, application of the amendment to Count 1 reduces his guideline range from 235-293 months to 210-262 months.

As set out in the Introduction, the parties agree that Defendant is eligible for a reduced sentence. But therein lies the rub. Defendant advocates for a reduced sentence at the low-end of the reduced guidelines. He emphasizes the disparity in his sentence from that of his co-defendant and his post-sentencing rehabilitation efforts. The Government, in turn, repeats its position from the original sentencing: Defendant is a public safety risk, the offense conduct involved an armed bank robbery and Defendant's co-offender threatened to shoot multiple victims and disarmed a security guard before shooting and seriously injuring a police officer with the security guard's firearm. The Government further argues that Defendant's post-sentencing conduct isn't much better noting that just months prior to filing for his reduction, the defendant engaged in violent behavior at the BOP. For these reasons, the Government urges that the original sentence of 235 months' imprisonment remains the appropriate sentence in this case.

The Court has considered the §3553 factors along with the Defendant's risk to public safety and his post-sentencing rehabilitation. Given the nature of the offense, which involved not only

5

his co-defendant's disarming of a security guard and shooting a police officer three times, but also threats to shoot innocent bystanders going about their daily lives, the Defendant's risk to public safety cannot be overlooked. But it is also the case that Hardin's co-defendant is responsible for much of this conduct, including the shooting of the police officer, and received a substantially lesser sentence than Hardin. While the Court is well-aware that Hardin engaged in violent conduct as well, the sentencing disparity of almost five years between the two defendants combined with the Defendants post-rehabilitation efforts lead the Court to the conclusion that a just sentence is one at the low-end of the amended guidelines range. After considering all the relevant §3553 factors and the policy statement, the Court concludes that the Motion for Reduction should be GRANTED and the Defendant's sentence reduced to 210 months' imprisonment on Count 1.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for a Sentencing Reduction. (ECF No. 118). The Clerk is directed to enter an amended judgment reflecting a reduction in sentence on Count 1 from 235 to 210 months. All other aspects of the judgment, including the sentence on Count 2 and the supervised release term shall remain the same.

SO ORDERED on May 20, 2024.

 s/ *Holly A. Brady*  
CHIEF JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT